## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **S.W.**

**No. 19-0473** (Randolph County 2018-JA-051)

**FILED**

**February 7, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father S.J., by counsel G. Phillip Davis, appeals the Circuit Court of Randolph County's May 1, 2019, order terminating his parental rights to S.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Heather M. Weese, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2018, the DHHR filed an abuse and neglect petition alleging that the child was born drug-exposed and exhibited symptoms of fetal alcohol syndrome. In September of 2018, the DHHR filed an amended abuse and neglect petition against petitioner alleging that he was the biological father of the child. The DHHR further alleged that petitioner was addicted to drugs, had committed domestic violence against women, and had numerous violent and/or drug-related criminal convictions. Consequently, the DHHR alleged that petitioner's drug addiction negatively impacted his ability to parent the child. Thereafter, the circuit court ordered petitioner to submit to random drug screening.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

At an adjudicatory hearing held in January of 2019, petitioner stipulated to the allegation that his drug addiction negatively impacted his ability to parent the child. The circuit court accepted petitioner's stipulation and adjudicated him as an abusing parent. At the conclusion of the hearing, the circuit court ordered petitioner to immediately report for drug screening. Later that month, petitioner filed a motion for a post-adjudicatory improvement period. In February of 2019, the DHHR moved to terminate petitioner's parental rights, and the guardian joined in the motion.

In April of 2019, the circuit court held a final dispositional hearing and was advised that petitioner was incarcerated for domestic battery. Petitioner testified in support of his motion for an improvement period, arguing that he would likely post his criminal bond to secure his release from custody. The DHHR presented evidence that petitioner never produced a "clean" drug screen, exercised visits with the child, or submitted to his twice-scheduled parental fitness evaluation. Further, on cross-examination, petitioner testified that he was arrested and incarcerated at least three times during the course of the proceedings for various offenses, including possession of narcotics. The DHHR and the guardian argued that petitioner was unlikely to fully participate in an improvement period. Based upon the evidence presented, the circuit court found no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that terminating petitioner's parental rights was necessary for the child's welfare. Ultimately, the circuit court denied petitioner's motion for an improvement period and terminated his parental rights by order entered on May 1, 2019. It is from the dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in terminating his parental rights instead of imposing a less-restrictive dispositional alternative. In support, petitioner argues that he would have fully participated in an improvement period and the circuit court erred "by not granting [him] a less drastic disposition."

---

[2]The mother's parental rights were also terminated. The permanency plan for the child is adoption in the current foster home.

West Virginia Code § 49-4-604(b)(6) permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

Additionally, under West Virginia Code § 49-4-604(c)(1), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning.

With these parameters in mind, it is clear that the record supports the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and/or neglect, given his untreated addiction and noncompliance during the proceedings. At adjudication, petitioner stipulated that his drug addiction negatively impacted his ability to parent the child. Despite this admission, petitioner continuously tested positive for illegal substances throughout the proceedings and failed to submit to drug treatment or rehabilitation to address his addiction. At disposition, the DHHR presented evidence that petitioner had only seen the child once prior to the filing of the petition, and had not seen the child during the proceedings because he failed to exercise visits. The DHHR worker also testified that petitioner failed to attend either of his scheduled parental fitness evaluations. Lastly, petitioner admitted that he was arrested and incarcerated multiple times for several drug-related and/or violent offenses, including possession of narcotics. Clearly, sufficient evidence was presented to find that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect in the near future.

While petitioner claims that he should have been granted a less-restrictive disposition because he might eventually be able to correct the conditions of abuse and neglect, we have previously held that

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction

3

with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Moreover,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Here, the record indicates that the then one-year-old child needed continuity in care, stability, and permanency, which would be achieved through adoption by the foster family. Because termination of petitioner's parental rights was necessary for the child's welfare and there was no reasonable likelihood that the conditions of abuse and/or neglect could be substantially corrected in the near future, we find no error in the circuit court's decision to terminate petitioner's parental rights rather than employ a less-restrictive dispositional alternative.

Accordingly, the circuit court's May 1, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: February 7, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

4